IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TONYA HALE, individually and as parent and next friend of B.H., a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-16-1279-C |
| INDEPENDENT SCHOOL DISTRICT, NO. 45 OF KAY COUNTY, OKLAHOMA, a/k/a Blackwell Public School District, | ) ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff filed this case in regard to her child, B.H., a minor. B.H. was a student at Blackwell Middle School, located in the Blackwell Public School District ("Defendant" or "District"). Plaintiff asserted claims of (1) negligence, (2) intentional infliction of emotional distress, (3) breach of implied contract, (4) retaliation, (5) danger creation theory arising under the Due Process Clause of the Fourteenth Amendment, (6) violation of the Equal Protection Clause of the Fourteenth Amendment, and punitive damages. Defendant filed a Motion to Dismiss (Dkt. No. 3) and Plaintiff responded. The Motion is now at issue.

While attending Blackwell Middle School, B.H. had an Individualized Education Program ("IEP") to help with his emotional difficulties. The IEP implemented certain grading adjustments and schedule variations, allowing B.H. to leave class early to avoid bullying in the hallways. Plaintiff alleges that a math teacher harassed B.H. in class, refused to follow the IEP, and during the lunch hour assigned B.H. to sit next to another bullying student, preventing B.H. from eating. The math teacher also assigned another bully to sit

behind B.H. in the classroom, resulting in the student stabbing B.H. in the arm with a pencil. B.H. also experienced other forms of bullying at school, and when he and Plaintiff reported the incidents to other teachers and the principal, he was either told to "deal with it" or disregarded. As a result of the bullying and lack of grade adjustment by the math teacher, B.H. would often cry in class, suffered from emotional breakdowns, and his grades lagged, preventing him from participating in extracurricular activities.

The standard for consideration of motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is set forth in the Supreme Court's decision in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and the subsequent decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In those cases, the Supreme Court made clear that to survive a motion to dismiss, a complaint must contain enough allegations of fact which, when taken as true, "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to survive a motion to dismiss. Id. Thus, the starting point in resolving Defendant's Motion is to examine the factual allegations supporting each claim that Defendant wishes the Court to dismiss. The Court will accept all well-pleaded factual allegations in the pleadings as true and construe them in the light most favorable to the nonmoving party. Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010). However, conclusory allegations need not be accepted as true. Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011).

I:  Governmental Tort Claims Act

Defendant argues the tort claims should be dismissed because the Petition was filed three days outside the 180-day requirement imposed by the Oklahoma Governmental Tort Claims Act ("GTCA").  51 Okla. Stat. § 157(B).  Plaintiff argues the action was timely because notice of the claim was first presented to the District on August 17, 2015.  After 90 days with no action taken, the claim was deemed denied. 51 Okla. Stat. § 157(A).  However, the 90th day fell on Sunday, November 15, 2015.  Pursuant to 12 Okla. Stat. § 2006, Plaintiff argues she was permitted to consider the denial effective on the following business day, Monday, November 16, 2015.  Plaintiff states she then had 180 days in which to commence this action.  The 180th day from Plaintiff's denial date is Saturday, May 14, 2016.  Again following § 2006, Plaintiff filed this case on Monday, May 16, 2016.

The Oklahoma Legislature restricts waiver of sovereign immunity "only to the extent and in the manner provided in [the GTCA]."  51 Okla. Stat. § 152.1.  The GTCA makes the Oklahoma statutes and Rules of Civil Procedure applicable to the extent they are not inconsistent with the act, a rule exercised by the Oklahoma Supreme Court.  See Slawson v. Bd. of Cnty. Comm'rs of Logan Cnty., 2012 OK 87, ¶¶ 7-8, 288 P.3d 533, 534-35 (finding that when the filing limitation expired on a Sunday, the deadline extended to Monday); Lasiter v. City of Moore, 1990 OK CIV APP 76, 802 P.2d 1292, 1294 (holding that when the 180-day deadline fell on a Saturday, the filing period extended to Monday); 51 Okla. Stat. § 164.  However, neither § 2006 nor the GTCA clearly addresses whether the extension applies to the 90-day "deemed denial" of a claim.

3

In Lucas v. Indep. Pub. Sch. Dist. No. 35 of Holdenville, 1983 OK 121, 674 P.2d 1131 (superseded by statute), the Oklahoma Supreme Court was presented with a collateral notice issue that has since been altered by statute, but part of the analysis is applicable to this case. The Lucas plaintiff submitted a claim to a governmental entity, and after 90 days, on Sunday, April 22, 1979, the claim was deemed denied. The Oklahoma Supreme Court then found that the filing limitation began to run, without regard to the fact that the 90-day expiration fell on a weekend. Id. at 1133.

In Trent By & Through Trent v. Bd. of Cnty. Comm'rs of Johnston Cnty., 1988 OK 15, 755 P.2d 615, the plaintiff sent notice of a claim to a government entity, making the deemed denial date February 11, 1982. However, plaintiff received notice the claims were denied on March 1, 1982. Plaintiff argued the filing limitation should not begin until March 1st. This was rejected by the Supreme Court of Oklahoma. It stated:

> We believe the statutes should be interpreted to mean that where a person does not hear from a political subdivision either approving or denying a claim within 90 days, the claim is *automatically denied*. The apparent purpose of this 90 day limit on a political subdivision to either approve or deny a claim is for the benefit of plaintiffs. A political subdivision cannot needlessly delay the filing of a claim by a plaintiff in district court beyond 90 days.

Id. at 619 (emphasis added). The Trent court held claims are denied "by operation of law under § 157" and then the 180-statute of limitations begins to run. Id. at 617.

Applying strict interpretation to § 157(A), Plaintiff's claim was automatically deemed denied on Sunday, November 15, 2015, triggering the 180-day filing limitation. Thus, the Petition must have been filed by Friday, May 13, 2016. As stated by case law, the § 2006

4

computation of time rule is applicable to the court filing deadline but not to the deemed denial date of a claim by a government entity. Accordingly, the tort claims must be dismissed.[1]

## II: Intentional Infliction of Emotional Distress

Defendant seeks to dismiss the intentional infliction of emotional distress claim. Plaintiff did not object. (Pl.'s Resp. Mot. to Dismiss, Dkt. No. 5, p. 19.) Accordingly, this claim is dismissed.

## III: Breach of Implied Contract

Plaintiff asserted a breach of implied contract claim, stating the student handbook serves as an implied contract between the District and its students. Defendant argues the claim must be dismissed because a student handbook cannot form an implied contract as a matter of law.

The Oklahoma Supreme Court has not addressed whether a student handbook issued by a public secondary school can give rise to an implied contract between the district and a student. When Oklahoma law has not addressed an issue, a federal court exercising supplemental jurisdiction must ascertain whether the Oklahoma Supreme Court would, if given the opportunity, recognize the claim. <u>Blackhawk-Cent. City Sanitation Dist. v. Am.</u>

---

[1] Defendant's request for dismissal of all tort claims includes the negligence, intentional infliction of emotional distress, and retaliation claims. Defendant reasoned that Plaintiff's retaliation claim appeared to be asserted under state tort law because it alleged the "District employees acted with some animus or bad faith." (Mot. to Dismiss, Dkt. No. 3, p. 9, n.1.) Plaintiff did not object to this proposition, so the Court will dismiss the retaliation claim. <u>See</u> LCvR7.1(g).

Guarantee & Liab. Ins. Co., 214 F.3d 1183, 1188 (10th Cir. 2000). To prove breach of implied contract, Plaintiff must show: "(1) competent parties, (2) consent, (3) a legal object and (4) consideration." Russell v. Bd. of Cnty. Comm'rs, Carter Cnty., 1997 OK 80, ¶ 23, 952 P.2d 492, 502.

Similar to the current issue, an implied contract has been recognized in the context of the employer-employee relationship based on an employee handbook. Id. However, most courts have found the student handbook comparison to fail for lack of consideration. See, e.g., Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cnty., Okla., 960 F. Supp. 2d 1254, 1268-69 (N.D. Okla. 2013); Brodeur v. Claremont Sch. Dist., 626 F. Supp. 2d 195, 217 (D.N.H. 2009) (collecting cases).

In Oklahoma, attendance in elementary and secondary school is compulsory. 70 Okla. Stat. § 10-105. Additionally, the District is required to provide an education and the state requires that certain information be available in student handbooks. See 70 Okla. Stat. § 24-100.4 (requiring the publication of an anti-bullying policy in the student handbook); 70 Okla. Stat. § 24-105 (requiring handbook information regarding clubs and organizations). Therefore, mutual consideration cannot be present between B.H. and the District as a matter of law because each party was carrying out a preexisting legal duty. See Black v. Baker Oil Tools, Inc., 107 F.3d 1457, 1464 (10th Cir. 1997) ("Performance of . . . obligations a party already is legally bound to perform, is *not* sufficient consideration to support a contract." (citation omitted)). Accordingly, the claim must be dismissed.

IV: Danger Creation Theory

Plaintiff alleges the District violated B.H.'s Substantive Due Process rights by creating a danger or increasing B.H.'s vulnerability to harassment, intimidation, and bullying. To be successful with this claim, Plaintiff must demonstrate:

> (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

Currier v. Doran, 242 F.3d 905, 918 (10th Cir. 2001).

Plaintiff argues the claim must proceed because District actors, knowing B.H.'s situation, told him to "deal with it" or disregarded bullying reports. However, the Court finds these actions fail to shock the conscience. The potential or actual harm created by the District must reach a "high level of outrageousness." Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995). The Tenth Circuit has stated "'[i]t is well settled that negligence is not sufficient to shock the conscience. In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.'" Camuglia v. City of Albuquerque, 448 F.3d 1214, 1222 (10th Cir. 2006) (citation omitted).

In Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226 (10th Cir. 1999), a student suffered from severe mental and physical limitations and was unable to speak. Id. at 1230. The student communicated to his mother that he was being sexually abused by

7

another student. The mother reported this to school administrators who "assured [the mother] that the children were not allowed to go to the bathroom alone and that there was no way this could have happened to [the student]." Id. The same abuse reoccurred before the assailant was apprehended. Facts later came to light that a teacher, charged with watching the student after administrators were aware of the sexual abuse, abandoned her post outside the bathroom to answer the telephone, inadvertently allowing another attack to occur. Id. The Tenth Circuit found these facts were not successful in showing "reckless or intentionally injury-causing state action which shocks the conscience of federal judges" made by school administrators, the defendants. Id. at 1238 (citations and internal quotations omitted). If the Sutton actions did not give rise to a valid claim, these facts, naming only the District as a defendant, cannot. This claim is dismissed.[2]

V: Equal Protection Clause of the Fourteenth Amendment

Defendant seeks to dismiss the sixth cause of action, an Equal Protection claim. Plaintiff failed to respond to the Motion on this proposition and is therefore deemed to have conceded the argument. See LCvR7.1(g).

---

[2] Defendant also argues Plaintiff's federal law claims must be dismissed because the pleadings fail to allege that any District policy, custom, or practice, or actions taken by a District official with final policy-making authority, violated B.H.'s rights. The Court declines to address these arguments, as both the danger creation theory and Equal Protection claims are dismissed for other reasons.

8

Even if Plaintiff opines that the Response addressed the Equal Protection argument through Defendant's fourth proposition,[3] the Equal Protection claim must still be dismissed because Plaintiff failed to state a claim. The Equal Protection Clause of the Fourteenth Amendment "'creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly.'" Teigen v. Renfrow, 511 F.3d 1072, 1083 (10th Cir. 2007) (quoting Vacco v. Quill, 521 U.S. 793, 799 (1997)). However, Plaintiff has not begun to make out an Equal Protection claim because the pleadings contain no allegation that B.H. was a member of a certain class. For both reasons stated, the claim is dismissed.

## VI: Punitive Damages

Defendant argues Plaintiff may not recover punitive damages under 42 U.S.C. § 1983 nor may they be awarded against a political subdivision on a claim arising out of state law. Plaintiff did not object. (Pl.'s Resp. Mot. to Dismiss, Dkt. No. 5, p. 19.) The Court will strike Plaintiff's punitive damages request from the pleadings.

## VII: Failure to Exhaust IDEA Remedies

Defendant argues Plaintiff's federal claims should be dismissed because Plaintiff has failed to exhaust administrative remedies available under the Individuals with Disabilities Education Act for violations of B.H.'s IEP. Because all federal claims are dismissed on their merits, the Court declines to address these arguments.

---

[3] The Court did not construe this argument as responsive to the Equal Protection discussion because Plaintiff only argues in regard to the Due Process claim.

## CONCLUSION

Accordingly, Defendant's Motion to Dismiss (Dkt. No. 3) is GRANTED. A separate judgment shall issue.

IT IS SO ORDERED this 19th day of January, 2017.

ROBIN J. CAUTHRON
United States District Judge